UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

BARRY LAW,

     Plaintiff,

v.

NEW MEXICO STATE
UNIVERSITY, and SUSAN
GROTEVANT, an individual,

     Defendants.

No. 08-CV-675 BRB/WPL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BALDOCK, Circuit Judge.\*

THIS MATTER comes before the court on the parties' cross-motions for

partial summary judgment. Defendants New Mexico State University (NMSU or the

University) and Susan Grotevant move for summary judgment on Plaintiff Barry

Law's claims for violation of due process and defamation as to Defendant Grotevant.

Likewise, Plaintiff moves for summary judgment on his claims for breach of contract

and violation of due process. For the reasons stated below, the court grants

Defendants' motion in part and denies Plaintiff's motion. Plaintiff's claims for

---

   \* The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth
Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

violation of due process, breach of contract, and defamation as to NMSU remain.

I.

The University employed Plaintiff as Transportation Director in the Office of Facilities and Services (OFS).  Plaintiff was responsible for managing the motor pool, heavy equipment pool, and the filling station that supplied fuel to many University departments.  Under the NMSU Policy Manual, Plaintiff was a tenured employee and could only be terminated for just cause.  The University terminated Plaintiff after an audit of the entire OFS Department revealed widespread problems, including poor business practices, lack of effective internal control, the possibility of fraud, and lack of effective management oversight at various levels.  Prior to his termination, Plaintiff fully cooperated with the auditors during their investigation of OFS.

The audit led to a shake-up in OFS.  Plaintiff's immediate supervisor, Steve McCarty, was reassigned during the University's review of the audit, before tendering his retirement and resignation.  Rich MacRorie, the Executive Director of OFS, also retired after the University initiated a "proposed action" regarding his employment.  Finally, the University reassigned Benjamin Woods, Senior Vice President for Planning, Physical Resources, and University Relations, from oversight of OFS.

On November 16, 2007, Defendant Grotevant, Associate Vice President for Business, Finance & Human Resources, sent Plaintiff a memo (the Grotevant memo)

placing him on administrative leave with pay.  According to the memo, the decision was "due to an investigation of alleged gross mismanagement of operations and fraudulent billing practices" in OFS.  The Grotevant memo also directed Plaintiff to "refrain from discussing these allegations in any manner with university employees" and prohibited Plaintiff from "enter[ing] the university campus or any of its facilities."

On December 18, 2007, Plaintiff received a "Notice of Proposed Employment Termination" from Defendant Grotevant.  The notice stated it was "in accordance with Section 8.30 of the NMSU Policy Manual for the following reasons:" (1) "Gross negligence of duties;" (2) "Gross mismanagement of operations;" (3) "Fraudulent billing practices; and," (4) "Abuse of privilege."  The notice also indicated that "an internal investigation [had] revealed a pattern of mismanagement and lack of integrity over an extended period."

The University held a "pre-action review hearing" with Plaintiff on January 4, 2007.  Plaintiff attended the hearing with his attorney.  Other University officials were also in attendance.  At the hearing, Plaintiff raised several concerns, including (1) that he was unsure of the basis for the disciplinary action and sought clarification on some of the broad characterizations of the notice he received, (2) that he was unsure what evidence supported the information leading to his proposed termination, and (3) questioned whether termination was an appropriate sanction because he had not been given previous warnings or disciplinary action and his performance

evaluations to date had been satisfactory.

On January 17, 2008, Bill Mack, the new Director of OFS, sent Plaintiff a "Notice of Final Determination" informing him that the University would uphold its initial proposed decision to terminate him.  University policy provided for a post-termination grievance process, which included three stages.  Plaintiff began the grievance process.  At the first stage of the grievance procedure, the University affirmed its initial decision.  Before completing the grievance procedure, Plaintiff filed this action in state court.  Under 28 U.S.C. §§ 1331 & 1343 Defendants removed Plaintiff's suit to this court.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).  "When the parties file cross motions for summary judgment, '[the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" Id. (quoting James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir.1997)).

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Id.

A.

Plaintiff alleges the University violated his due process rights by terminating him without "provid[ing] oral or written notice of the charges against him" and "evidence in support of those charges or a hearing to address the issues as required by federal law," specifically 42 U.S.C. § 1983.  Under § 1983, Plaintiff "must establish that the defendants acted under color of state law and that the defendants' actions deprived [him] of some federal right."  Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004).  "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  Id.

Here, the University admits the first prong, i.e., Plaintiff's protected interest in his employment, and does not dispute that it acted "under color of state law." Accordingly, for purposes of summary judgment, the court need only decide whether Plaintiff received an appropriate level of process—which is necessarily dispositive of whether the University "deprived plaintiff of some federal right." see id. (proceeding to discuss the "level of process" when parties did not dispute the "under color of state law" or "protected property interest" elements of a § 1983 due process

5

claim).

In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985), the Supreme Court held that due process requires "'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." A pretermination hearing, also referred to as a predetermination hearing, serves to evaluate "'whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Montgomery, 365 F.3d at 935 (quoting Loudermill, 470 U.S. at 545-46).

Even though a pretermination hearing is "necessary," it "need not be elaborate." Id.; see also Hulen v. Yates, 322 F.3d 1229, 1248 (10th Cir. 2003) (holding the standard for a predetermination hearing necessary to satisfy Loudermill is "not very stringent"). The Supreme Court did not intend a predetermination hearing to be a mini-trial that "definit[ively] resolve[s] the propriety of the discharge." Montgomery, 365 F.3d at 938. Although the pretermination process need not be elaborate, there are minimum requirements. Specifically, the process must include: "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence and (3) an opportunity for the employee to present his side of the story." Id. at 936 (internal quotations, alterations, and citation omitted).

Defendants contend that Plaintiff received all the pretermination "process" he was due because (1) the Grotevant memo sufficiently apprised Plaintiff of the

6

allegations against him, and (2) Plaintiff was aware of the evidence supporting the allegations before receiving the Grotevant memo.  For his part, Plaintiff challenges the facial sufficiency of the Grotevant memo and contends that his participation in the OFS audit did not apprise him of the evidence supporting his termination.

1.

After reviewing the Grotevant memo, the court concludes it is facially sufficient to apprise Plaintiff of the "charges against him."  Montgomery, 365 F.3d at 936.   Although Plaintiff contends the document is framed in "broad generalizations," the court concludes that an objective reading—even done in the light most favorable to Plaintiff—reveals sufficient depth as to the foundation of the University's allegations to satisfy the requirement of "notice to the employee of the charges against him."  Id.  Specifically, the Grotevant memo described the charges against Plaintiff as follows:

> You exercised abuse of privilege by directing employees to willingly disregard standard procedures in fraudulent, duplicate, and erroneous billing to university departments including those within OFS.  You failed to follow department procedures in establishing standard rates for billing purposes within Transportation Services.  You failed to establish and implement adequate internal controls within your department, including development of controls to monitor the distribution and use of gas keys/cards.   The findings identified indicate systemic and pervasive deficiencies and abuse within the operations under your direction.  As Director of Transportation, your actions or failure to act have resulted in substantial negligence of duties and mismanagement of operations resulting in a breach of your fiduciary obligation to the university.

2.

Although the court concludes that the Grotevant memo sufficiently apprised Plaintiff of the University's allegations against him, summary judgment in the University's favor does not inexorably follow.  See Montgomery, 365 F.3d at 936. In addition to notice and an opportunity to respond, a minimum requirement of a pretermination process is "an explanation of the employer's evidence."  Id. According to Plaintiff, he was unable to provide a defense to the University's charges because it failed to explain the evidence supporting the allegations in the Grotevant memo during the pretermination process.  Defendant contends that Plaintiff was adequately apprised of the evidence against him because he participated in the audit of OFS that led to his termination.  At this point in the case, the court must agree with Plaintiff and will deny summary judgment on this ground alone.[1]

After reviewing all the pleadings and the evidence attached thereto, the court concludes that issues of material fact remain concerning whether Plaintiff was ever informed of the evidence against him prior to termination.  The Grotevant memo never *explains the evidence* supporting the allegations it references.  The memo states "an internal investigation revealed" evidence of the allegations, but the extent of Plaintiff's knowledge about the "investigation" is disputed, thus leaving factual

---

[1] Of course, the court may, after listening to the evidence at trial, determine that testimony establishes as a matter of law that Plaintiff received adequate notice of the employer's evidence.

issues to be decided at trial.

The University points to Plaintiff's admission in deposition that an email (not provided to the court) documents he committed an "egregious error" prior to the start of the audit in Transportation Services.  But this statement is insufficient to demonstrate Defendant NMSU met its explanatory obligation for at least two reasons.

First, the statement, in context, is equivocal.  Plaintiff indicated that the "error" was simply for asking another employee to do something that she, for whatever reason, did not appear "comfortable" doing, possibly because of lack of training or knowledge of billing procedures.  In explaining his actions, Plaintiff said his direction was "an appropriate thing, but [the other employee] didn't feel comfortable . . . so I backed away."[1]

_____

[1] The deposition reads as follows:

[Defense counsel:] I'm going to show you what I've marked as Exhibit 2 and ask you just to read the E-mail, and then your response, and then tell me what this is all about.
[Plaintiff:] Okay.  That was – that, I agree, is an *egregious error.*  I had asked Maggie to bill to the Heavy Equipment Shop the rental on this Jeep Cherokee, to lease it to the Heavy Equipment Shop.  It was a means of getting funding into the motor pool operation, transportation operation.  The president was extremely bearing down on having his Fleet Management Program put together, yet we had absolutely no fudning in which to do that.  So if I could get some money in from the Heavy Equipment pool, which I was over, through leasing this vehicle to that pool – because it was being used by the pool.  And actually, *it was an appropriate thing*, but *she didn't feel comfortable with it*, so I
(continued...)

Second, and more importantly, Defendant NMSU does not demonstrate that

the email Plaintiff referenced at the deposition was brought to Plaintiff's attention

as evidence for the University's decision *prior to termination*. See Montgomery, 365

F.3d at 936 ("Loudermill requires the employer to provide—*before the*

*termination*—notice of the charges, *a summary of the employer's evidence*, and an

opportunity to respond.") (second emphasis added).

Defendant compares this case to  West v. Grand County, 967 F.2d 362 (10th

Cir. 2002), contending that, because Plaintiff admitted he participated to some extent

in the audit, he was necessarily aware of the evidence against him.  In West, the

Tenth Circuit held that "meetings and consultations" with an employee before she

was terminated satisfied minimal due process standards for an informal

pretermination hearing.  Id. at 368.  The employee in that case was dismissed

ostensibly due to a "reduction in force" and "received notice of her potential

dismissal during a meeting with [her supervisor] and she otherwise indicated that *she*

*was aware that her job likely was not going to be retained*."  Id. at 365 (emphasis

added); see also id. at 368 (emphasizing that the employee, during a two hour

---

$^1$(...continued)
backed away from it.

(emphasis added).  Neither party attached the email referenced as "Exhibit 2" to its motion for summary judgment or explained exactly what is described in it, so there is no way for the court to know what the alleged "egregious error" but "appropriate" action by Plaintiff was.  The court will not grant summary judgment on such thin footing.

meeting with her supervisor, "acknowledged" that "she learned . . . her job was in

jeopardy"). Here, Defendants produced some evidence indicating Plaintiff may have

known about problems in OFS during his cooperation with the audit. But the extent

to which the University identified evidence of these problems as the cause of

Plaintiff's termination remains a disputed issue of material fact. At this point, the

court is unclear whether Plaintiff somehow found out during the audit that his job

was in jeopardy because of the problems in OFS. Something more concrete is

necessary to establish that the University discharged its obligation to provide

Plaintiff with "an explanation" of its evidence. See Loudermill, 470 U.S. at 546

("The tenured public employee is entitled to . . . an explanation of the employer's

evidence."); see, e.g., Derstein v. State of Kan., 915 F.2d 1410, 1413 (10th Cir.

1990) (finding sufficient that plaintiff was "told of the investigation [concerning

sexual-harassment] and the name of an employee who threatened to bring a sexual

harassment suit against the [employer] due to his conduct."), abrogated on other

grounds by Fed. Lnds Legal Consortium ex rel. Robart Estate v. United States, 195

F.3d 1190, 1195 (10th Cir. 1999); Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th

Cir. 1989) (holding an employee's answers to a supervisor admitting specific acts of

misconduct served as adequate notice of the evidence against the employee because

the supervisor's questions (1) put the employee "on notice" of the "concern[] about

his actions," and (2) once the employee "admitted the allegations," the basis for the

supervisor's questions "became irrelevant.")

11

Defendants also cite Herrera v. City of Albuquereque, No. 98-2243, 1999 WL 815815 (10th Cir. Oct. 13, 1999) (unpublished),[2] in which the Tenth Circuit held that failure to notify an employee of the identify of his accuser did not violate due process.  Herrera is easily distinguishable.  Coworkers in that case reported that an employee "smelled of alcohol, slurred his speech, and appeared unsteady on his feet while at work."  Id. at *1. The employer requested that the employee take a drug and alcohol test, which the employee refused.  Id. Subsequently, the employer held a pretermination hearing and dismissed the employee for "reporting to work and performing work while under the influence of alcohol, and refusing to undergo substance abuse testing."  Id. at *1-2.  The employer "did not name the coworkers who made the allegations."  Id. at *1.  Here, Plaintiff's dismissal did not follow after he refused to perform an employer's specific request related to ascertaining the occurrence of a specific act of misconduct.  By contrast, Plaintiff appears to have cooperated fully in the OFS audit and it is unclear what evidence (beyond mere allegations) the University relied on in dismissing him.

In light of the above discussion, the court concludes that, even though Plaintiff received notice of the specific reasons for his termination, questions of material fact remain regarding whether (1) the University ever disclosed any of the evidence it relied on in terminating Plaintiff, and (2) whether Plaintiff was aware, due to his

---

[2]    The court notes that Defendants did not alert the court of the non-precedential nature of this case, or attach a copy thereof to its motion.

participation in the OFS audit, of the evidence placing his job in jeopardy.

                                        B.

Defendant also contends that Plaintiff's due process claim fails as a matter of law because he failed to complete the post-termination grievance procedure. Plaintiff contends he was not required to finish the grievance procedure because it was a "sham," citing difficulties his attorney had obtaining access to witnesses, evidence, etc.  The court need not resolve this dispute at this point, however, because "if the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures." Alvin v. Suzuki, 227 F.3d 107, 120 (3d Cir. 2000); see also Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (describing "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant interest.") (emphasis in original).  "Post-termination remedies, no matter how elaborate, do not relieve the employer of providing the *minimal* pre-termination procedural protections in Loudermill." Montgomery, 365 F.3d at 937 (emphasis in original).  Therefore, if it is revealed at trial that Plaintiff was not afforded due process in the University's pretermination procedures, he might be entitled to some form of relief.  See id. (discussing "damages generally available for a violation of procedural due process").

                                        III.

Remaining for consideration are Plaintiff's claims for defamation and breach

of contract.   As to the defamation claim, Plaintiff conceded in briefing the New

Mexico Tort Claims Act, specifically N.M. Stat. § 41-4-4, contains no waiver of

immunity *as to Defendant Grotevant*.   Neither Plaintiff nor Defendants have

addressed the propriety of Plaintiff's claims for defamation *against the University*.

Accordingly, Defendants' motion for summary judgment as to Defendant Grotevant

is hereby granted, leaving resolution of Plaintiff's defamation claim against the

University for further proceedings.

Concerning the breach of contract claim, it appears that Defendants never

actually moved or made any argument in its memorandum of law supporting

summary judgment that the contract claim should be dismissed.   The entirety of

Defendants' memorandum of law supporting summary judgment is devoted to

Plaintiff's due process and defamation claims.   It was not until Defendants filed a

reply to Plaintiff's cross-motion for partial summary judgment that Defendant even

mentioned the breach of contract claim.   Thus, the court finds Defendants' cavalier

claim—contained within its initial motion for summary judgment—that "this lawsuit

can be dismissed on its merits" somewhat beyond the pale.

Plaintiff did, however, explicitly move for summary judgment on his contract

claim.   He contends that the University violated the NMSU Policy Manual,

specifically Section 8.30 by not providing the "specific acts resulting in" his

termination or a "summary of the information used in support" of the University's

proposed action.  In light of the foregoing discussion of Plaintiff's due process claim,

the court concludes that questions of material fact remain concerning whether the University provided Plaintiff with a "summary of the information used in support" of its proposed termination action.   Accordingly, Plaintiff's motion for partial summary judgment is hereby denied.

VI.

In summary, the court concludes that questions of material fact remain concerning Plaintiff's due process and breach of contract claims.   The court also believes that Plaintiff's defamation claim against the University remains viable, given both parties' failure to address it in briefing.   Finally, the court grants Defendant Grotevant's motion for summary judgment on the defamation claims against her, and dismisses her from this action.

SO ORDERED.

> Entered for the Court
> this 8th day of June, 2009
>
>
> _____
> The Hon. Bobby R. Baldock
> United States Circuit Judge
> Sitting By Designation